IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**FILED**

May 04, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Belinda Gamez_____

DEPUTY

UNITED STATES OF AMERICA, .    Case No. 3:21-CR-01657(1)-FM
                             .
          Plaintiff,         .
                             .
      v.                     .
                             .
JOHNNY GEORGE GONZALEZ,      .
                             .
          Defendant.         .    Thursday, April 14, 2022
. . . . . . . . . . . . . .  .    3:17 p.m.


TRANSCRIPT OF CONTINUED REARRAIGNMENT HEARING
BEFORE THE HONORABLE LEON SCHYDLOWER
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:        United States Attorney's Office
                           By:  MICHELLE WINTERS, ESQ.
                                CATHERINE DOS SANTOS, ESQ
                           700 East San Antonio Avenue, Suite 200
                           El Paso, Texas 79901


For the Defendant:         Louis E. Lopez, Jr., Attorney at Law
                           By:  LOUIS E. LOPEZ, ESQ.
                           416 N. Stanton Fourth Floor, Ste 400
                           El Paso, Texas 79901



Deputy Clerk:              Cecilia Rodriguez
                           U.S. District Court
                           525 Magoffin Avenue, Suite 105
                           El Paso, Texas 79901



Transcription Company:     Liberty Transcripts
                           7306 Danwood Drive
                           Austin, Texas 78759
                           (847) 848-4907
                           www.libertytranscripts.com



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

INDEX

|  | Page |
|---|---|
| Case called | 3 |
| Defendant enters Guilty Plea | 20 |
| Government states Factual Basis | 20 |
| Court sends case back to District Court | 35 |
| End of Proceedings | 37 |
| Certification of Transcriber | 38 |

WITNESSES

FOR THE PLAINTIFF:

 (None.)


FOR THE DEFENDANT:

 (None.)




| EXHIBITS | Marked | Received |
|---|---|---|

FOR THE PLAINTIFF:

 (None.)


FOR THE DEFENDANT:


 (None.)

1      EL PASO, TEXAS, THURSDAY, APRIL 14, 2022, 3:17 P.M.

2           THE COURT:  All right.  21-CR-1657, U.S. vs. Johnny

3   George Gonzalez.

4           Announcements, please?

5           MS. WINTERS:  Good afternoon, Your Honor.

6   Michelle Winters and Catherine Dos Santos on behalf of the

7   United States.

8           THE COURT:  Thank you, Ms. Winters.

9           MR. LOPEZ:  Your Honor, Louis Lopez on behalf of

10  Mr. Gonzalez.  We are ready.  We're just putting the final

11  signatures on our agreement.

12          THE COURT:  All right.  Thank you, Mr. Lopez.  Did

13  you have plenty of time before today to review the amended

14  information and amended plea agreement with Mr. Gonzalez?

15          MR. LOPEZ:  Yes.

16          THE COURT:  All right.  All right.  Mr. Gonzalez, you

17  can stay seated but raise your right hand for me, please.  Move

18  that -- Mr. Lopez, would you move that microphone close to

19  Mr. Gonzalez?

20          MR. LOPEZ:  Yes, Your Honor.

21           JOHNNY GEORGE GONZALEZ, DEFENDANT, SWORN

22          THE COURT:  All right.  You can put your hand down.

23  You've taken an oath to tell the truth.  What you say today

24  must be true or you can be prosecuted for perjury.  Do you

25  understand that what you say in court must be true?

4

1          THE DEFENDANT:  Yes.

2          THE COURT:  Louder, please.

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Counsel for the U.S. is

5   ordered to comply with its Brady disclosure obligations.

6   Failure to do so may result in the dismissal of charges,

7   adverse jury instructions, contempt proceedings, and/or

8   sanctions.

9          Mr. Gonzalez, is your true and complete name

10  Johnny George Gonzalez?

11         THE DEFENDANT:  Yes.

12         THE COURT:  How old are you, please?

13         THE DEFENDANT:  Thirty-five.

14         THE COURT:  How far did you go in school?

15         THE DEFENDANT:  College.

16         THE COURT:  Are you a U.S. citizen?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.  I have before me an amended

19  information that charges you in Count 1 with aggravated sexual

20  abuse of a child, and in Counts 2 through 11 the production of

21  visual depictions of a minor engaging in sexually explicit

22  conduct.  Do you -- first of all, did you go over this amended

23  information in its entirety with Mr. Lopez?

1              THE DEFENDANT:  Yes, I did.

2              THE COURT:  And do you understand all of the charges

3   contained in it?

4              THE DEFENDANT:  I do.

5              THE COURT:  Have you had any drugs, medicine, or

6   alcohol recently that might make this hearing confusing for

7   you?

8              THE DEFENDANT:  No.

9              THE COURT:  Have you had a serious head injury or

10  mental health problem before?

11             THE DEFENDANT:  No.

12             THE COURT:  Have you been able to communicate with

13  Mr. Lopez okay?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And have you understood me in what we've

16  done so far here this afternoon?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.  Mr. Lopez, any concerns about

19  competency?

20             MR. LOPEZ:  None, Your Honor.

21             THE COURT:  Thank you.  Ms. Winters?

22             MS. WINTERS:  No, Your Honor.

23             THE COURT:  Thank you.  Mr. Gonzalez, let me go over

24  the rights that you have, and also the trial rights that you'll

25  need to waive or give up if you'd like to plead guilty here

26  this afternoon.  Now, the first thing that I need to tell you

1  is that you have the right to appear before a District Judge
2  either to plead guilty or have a jury trial.  I'm not a
3  District Judge, I'm a Magistrate Judge.  So what that means is
4  I work for the higher District Judge who is assigned to your
5  case, and his name is Frank Montalvo.
6          Do you give up your right to appear before the higher
7  District Judge, and will you allow me to take your plea and
8  tell you about your rights this afternoon?  Will you allow
9  that, Mr. Gonzalez?
10          THE DEFENDANT:  Yes.
11          THE COURT:  All right.  You have the right to remain
12  silent.  You do not have to plead guilty if you do not wish to.
13  By pleading guilty, you're giving up your right to remain
14  silent.  You have the right to plead not guilty and to request
15  a jury trial.  By pleading guilty, there will be no trial.  You
16  have the right to be represented by counsel, and if necessary
17  have the Court appoint counsel at trial and at every other
18  stage of the proceedings.
19          Now, if you chose to have a trial, the following
20  would be your trial rights, to remain silent, to have an
21  attorney represent you, to be presumed innocent, to have the
22  Government prove the charges against you beyond a reasonable
23  doubt, to confront and cross-examine the Government's
24  witnesses, to object to the Government's evidence, to testify
25  and present your own witnesses and evidence and to compel the

1  attendance of witnesses by way of subpoena.

2          Do you understand all that, Mr. Gonzalez?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you give up your right to a trial, and

5  would you like to plead guilty here this afternoon?  Right now

6  just tell me yes or no, please.

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Now, you have the right to

9  have your case submitted to the Grand Jury.  Normally, when the

10 Government charges someone with a felony, it presents the case

11 to the Grand Jury.  The Grand Jury takes a vote.  Sometimes it

12 charges the person, sometimes it does not.  When the Grand Jury

13 charges somebody, it does so in a document called an

14 indictment.

15         The 11 counts to which you're pleading guilty this

16 afternoon were not presented to the Grand Jury.  Instead,

17 they're contained in a document called an information which the

18 Grand Jury did not return, but the Prosecutor did sign.

19         Do you give up your right to have these charges

20 submitted to the Grand Jury, and do you wish to plead guilty to

21 them as they are listed and contained in this information?  Is

22 that what you choose to do?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  And you consent to that?

25         THE DEFENDANT:  Yes.

```
 1            THE COURT:  Are you pleading guilty voluntarily?  In
 2   other words by your own choice.
 3            THE DEFENDANT:  Yes.
 4            THE COURT:  Did anybody threaten you or force you or
 5   make any promises to you to get you say here in Court that
 6   you're guilty?  Did anybody do that to you, Mr. Gonzalez?
 7            THE DEFENDANT:  No.
 8            THE COURT:  Now, I have a plea agreement.  I have an
 9   amended plea agreement with your -- actually, why don't you get
10   that, Veronica.
11        (Pause)
12            THE COURT:  All right.  An amended plea agreement
13   with your signature on it.  Did you go over this entire amended
14   plea agreement with Mr. Lopez before you signed it?
15            THE DEFENDANT:  Yes.
16            THE COURT:  Do you understand and accept and agree to
17   be bound by all of the terms of this amended plea agreement?
18            THE DEFENDANT:  Yes.
19            THE COURT:  Let me review the main parts of it with
20   you.  In this amended plea agreement, you are agreeing to plead
21   guilty to Counts 1 through 11, it says of the information.
22   Counsel, is that intended to say the amended information?
23            MS. WINTERS:  Yes, Your Honor.
24            THE COURT:  All right.  Let's go ahead and write that
25   in.  And have both Counsel initial that please, and
```

1  Mr. Gonzalez.  And then there's also information on file.  Is

2  that right?  Ms. Winters?

3          MS. WINTERS:  I'm sorry.  I don't understand, Your

4  Honor.

5          THE COURT:  There's also an information, a non-

6  amended information on file?

7          MS. WINTERS:  Correct.  I previously filed that.

8          THE COURT:  Is it the parties' intent to dismiss not

9  only the pending indictment but also the pending information?

10          MS. WINTERS:  Yes, Your Honor.

11          THE COURT:  Well, I guess this is an amended

12  information.  So it would supercede the original, correct?

13          MS. WINTERS:  Yes, Your Honor.

14          THE COURT:  Do you agree with that, Mr. Lopez?

15          MR. LOPEZ:  Yes, Your Honor.

16          THE COURT:  All right.  All right.  Let me see what

17  that says, please.  Thank you.  All right.  Counsel and

18  Mr. Gonzalez have now delineated Page 1 of the amended plea

19  agreement which now provides that the Defendant, Mr. Gonzalez,

20  agrees to plead guilty to Counts 1 through 11 of this amended

21  information which is now on file.

22          In exchange, the Government will move to dismiss the

23  pending indictment, and will do so at the time of sentencing.

24  Now, it lists the range of punishment in writing.  So is that

25  the right range of punishment for Count 1, Counsel?

1          MS. WINTERS:  Yes, Your Honor.

2          THE COURT:  Yes it is.  Yes it is.  Okay.  It lists

3    the range of punishment in writing for Count 1, and also 2

4    through 11 which I will go over in a little more detail here in

5    just a second.  Now, this amended plea agreement also has non-

6    binding sentencing factors in it which are agreements that you

7    have with the Government.  But they're not binding on the

8    District Judge.  And if he doesn't go along with it, and if he

9    doesn't go along with them, you'll still be bound by your

10   guilty plea and have no right to withdraw.

11         One of those non-binding sentencing agreements

12   relates to acceptance of responsibility.  There is a waiver of

13   jurisdiction and venue in this amended plea agreement in which

14   you're agreeing that if there is a challenge to venue in this

15   particular district, you do consent to having this case proceed

16   in this district, and you give up any challenge thereto.

17         You're giving up your right to any additional police

18   reports.  Now, this is the important part.  You're giving up

19   your right in this amended plea agreement to appeal your

20   conviction and sentence both directly and collaterally except

21   on the grounds of ineffective assistance of counsel or

22   prosecutorial misconduct.

23         You're agreeing that the attached factual basis is

24   true.  There's a forfeiture of assets section of this amended

25   plea agreement which contains a long list of items that you are

1   voluntarily forfeiting to the United States.  There's a section

2   in here explaining what happens in the event of a breach of the

3   plea agreement.  There's another section in here in which

4   you're agreeing to provide a complete and truthful disclosure

5   with respect to your financial situation.  That disclosure

6   would be, of course, to the probation office during your

7   presentence report interview.  There's a section in here in

8   which you are acknowledging the requirement that you will

9   register as a sex offender.

10          Mr. Lopez, did you review with Mr. Gonzalez all of

11   the requirements associated with registration as a sex offender

12   as a result of the guilty pleas to these charges?

13          MR. LOPEZ:  Yes I did, Your Honor.

14          THE COURT:  Again, please?

15          MR. LOPEZ:  I'm sorry?

16          THE COURT:  Louder, please.

17          MR. LOPEZ:  I'm sorry, Judge.  Yes I did.

18          THE COURT:  Thank you.  There's a section in here

19   providing that you are agreeing to pay restitution.  And it

20   also cites the applicable statutory provisions that require

21   that, also in terms of the amount per victim.

22          Did you go over this restitution provision section

23   with your lawyer very carefully, Mr. Gonzalez, and do you

24   understand it?

25          THE DEFENDANT:  Yes.

12

1          THE COURT:  All right.  There's a joint
2  recommendation regarding conditions of supervised release
3  contained on Page 16 of the amended plea agreement.  Again,
4  that's in the forum of a non-binding sentencing recommendation.
5  And of course, if Judge Montalvo does not go along with this,
6  you'll still be bound by your guilty plea and have no right to
7  withdraw it.
8          Now, Mr. Gonzalez, in Pages 17 through 32, there is a
9  factual basis explaining what happened in this case.  In the
10 parties' attempt to formulate a factual basis for the guilty
11 pleas to Counts 1 through 11, did you go over the entirety of
12 this factual basis with your lawyer?
13         THE DEFENDANT:  Yes.
14         THE COURT:  Is everything contained in this factual
15 basis true and correct?
16         THE DEFENDANT:  Yes.
17         THE COURT:  Now, there's an amended sealed addendum
18 to the amended plea agreement which contains some more
19 additional facts.  Are all of those facts true, as well?
20         THE DEFENDANT:  Yes.
21         THE COURT:  And then finally, Mr. Gonzalez, let me
22 aks you, are those the main provisions of your plea agreement
23 as you understand them?
24         THE DEFENDANT:  Yes.
25         THE COURT:  Of your amended plea agreement.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is there anything about your amended plea

3  agreement that you'd like me to review with you?

4          THE DEFENDANT:  No.  I've went over it with Louis

5  when we first got here.

6          THE COURT:  Okay.  Say that again please, loudly.

7          THE DEFENDANT:  I went over it with my attorney.

8          THE COURT:  Okay.  And do you understand each and

9  every provision of your amended plea agreement and the sealed

10 addendum?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Is there anything else you'd like me to

13 put on the record, Ms. Winters?

14         MS. WINTERS:  No, Your Honor.

15         THE COURT:  Mr. Lopez?

16         MR. LOPEZ:  No, Your Honor.  No, sir.

17         THE COURT:  All right.  Mr. Gonzalez, did you go over

18 with Mr. Lopez how the sentencing guidelines might apply in

19 your case?

20         THE DEFENDANT:  Oh, yes.  Yes.

21         THE COURT:  The District Judge will calculate those

22 sentencing guidelines and consider them, along with possible

23 departures and other factors under the law.  No one, not even

24 your lawyer can tell you for sure what kind of sentence you'll

25 receive because the sentencing guidelines are advisory.

14

1          The District Judge will however consider the
2    guidelines along with other factors in determining your
3    sentence.  Technically, you can receive a sentence anywhere
4    from the minimum all the way up to the maximum allowed by law.
5    If you receive a sentence more severe than you expect, or more
6    severe than you've discussed with your lawyer, you'll still be
7    bound by your guilty plea and have no right to withdraw it.
8          Do you understand all that, Mr. Gonzalez?
9          THE DEFENDANT:  I do.
10         THE COURT:  Say again, please.
11         THE DEFENDANT:  Yes, I do.
12         THE COURT:  Are you satisfied with Mr. Lopez's
13   representation and advice?
14         THE DEFENDANT:  I am.
15         THE COURT:  Say it again, please.
16         THE DEFENDANT:  I am.
17         THE COURT:  Did you discuss with him the things that
18   I've discussed with you, along with any possible defense to
19   these charges if there are such defenses?  Did you have those
20   kinds of conversations with your lawyer?
21         THE DEFENDANT:  Yes.
22         THE COURT:  All right.  Now, Count 1 alleges as
23   follows: that on or about July 31st of last year through
24   August 1st of last year, in this District, in the District of
25   New Mexico, and in the Northern District of Texas, you did

cross a state line with the intent to engage in a sexual act as that's defined under the law with a person who had not attained -- who had not attained the age of 12.  And the identified victim is a minor female with the initials T.R.

Now, under that statute, sexual act has a particular definition.  It is contact between the penis and vulva or the penis and the anus.  For the purposes of this subparagraph, contact involving the penis occurs upon penetration, however slight, or contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus, or the penetration, however slight, of the anal or genital opening of another by a hand or finger, or by any object with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person, or the intentional touching not through the clothing of the genitalia of another person who is not attained the age of 16 years with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

What the Courts say that the Government would need to prove beyond a reasonable doubt is the following three things, they're called elements, each of which the Government would need to prove beyond a reasonable doubt.  Number one, you crossed a state line.  Two, you did so with the intent to engage in a sexual act, as I've explained it, with a minor under the age of 12 years.  And three, either performing or

16

1  attempting to perform the act.  So that's what the Government

2  would need to prove beyond a reasonable doubt for you to be

3  found guilty of Count 1.

4          Now, Counts 2 through 11 allege the production of a

5  visual depiction of a minor engaging in sexually explicit

6  conduct.  Now, for you to be found guilty of this charge, the

7  Government would need to prove beyond a reasonable doubt the

8  following three elements.  Number one, you employed, used,

9  persuaded, induced, enticed, or coerced a minor to engage in

10  sexually explicit conduct.

11          Two, you acted with the purpose of producing a visual

12  depiction or transmitting a live visual depiction of such

13  conduct.  And what the Government alleges in your particular

14  case with respect to Counts 2 through 11 is that it's the first

15  part of that second element, that you acted with the purpose of

16  producing a visual depiction.

17          And then the third element as it's alleged in your

18  particular case is that the visual depiction was actually

19  transported or transmitted using any means or facility of

20  interstate or foreign commerce, or in or affecting interstate

21  or foreign commerce.  And the Government would need to prove

22  that beyond a reasonable doubt.

23          Now, for purposes of 22 -- I'm sorry.  For purposes

24  of Counts 2 through 11, there is a particular definition for

25  sexually explicit conduct which I'm going to review with you

right now.  All right.  Sexually explicit conduct for purposes
of Counts 2 through 11 means graphic sexual intercourse
including genital to genital, oral to genital, anal to genital,
or oral to anal, whether between persons of the same or
opposite sex, or the lascivious simulated sexual intercourse
where the genitals, breast, or pubic area of any person is
exhibited, or graphic or lascivious simulated (indiscernible),
bestiality, masturbation, or sadistic or masochistic abuse, or
the graphic or simulated lascivious exhibition of the anus,
genitals, or pubic area of any person.

And then Counts 2 through 11 of the amended plea
agreement, on the right column, explain what the Government
alleges you did and what it would prove at trial in that
regard.  So those are the nature of the charges in Counts 1
through 11.  Let me review with you the penalty ranges that
you're facing.

For Count 1, with respect to imprisonment, it's a
minimum term of imprisonment of 30 years and a maximum term of
imprisonment of live imprisonment.  For Counts 2 through 11,
the imprisonment range is a minimum term of imprisonment of 15
years, and a maximum term of life imprisonment.  Again, that's
four Counts 2 through 11.  For each count, Counts 1 through 11,
the fine range is up to $250,000.

With respect to supervised release, for Counts 1
through 11, it's a minimum term of supervised release of five

1  years, and a maximum term of supervised release of life.  Now,
2  supervised release is a period of time after prison, if you get
3  a prison sentence, during which you must follow certain rules.
4  And if while on release you break those rules, the higher
5  District Judge can send you back to prison for a second time.
6          Now, of course, as is the case in every federal
7  felony case, every federal felony charge, the special
8  assessment is $100 per count for each of Counts 1 through 11.
9  Now, because of the nature of these charges, there may be
10 additional special assessments that are provided under the
11 statute.  And those are listed in the range of punishment that
12 you reviewed with Mr. Lopez as part of your plea agreement.
13         Do you understand the nature of the charges and the
14 penalty ranges that you're facing, Mr. Gonzalez?
15         THE DEFENDANT:  Yes, I do.
16         THE COURT:  Ms. Winters, did I recite the nature of
17 the charges, the elements, and the penalty ranges correctly?
18         MS. WINTERS:  Yes, Your Honor.
19         THE COURT:  Is there anything else you'd like to put
20 on the record in that regard?
21         MS. WINTERS:  No, sir.
22         THE COURT:  Mr. Lopez, did I recite the nature of the
23 charges, the elements, and the applicable penalty provisions
24 correctly?
25         MR. LOPEZ:  Yes you have, Your Honor.

1          THE COURT:  Is there anything else that you'd like to
2  put on the record in this regard?

3          MR. LOPEZ:  No, sir.

4          THE COURT:  All right.

5          Mr. Gonzalez, did you review the forfeiture provision
6  in the amended information with Mr. Lopez, and do you
7  understand it?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.

10         And again, let me go back and ask you, did you
11  understand what I explained to you with respect to the nature
12  of the charges, what the Government would need to prove, and
13  the penalty ranges that you're facing with respect to Count 1
14  through 11?  Did you understand all that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.

17         Now, as we've already discussed, and as is reflected
18  in the plea agreement, you'll also be ordered to pay
19  restitution to the victim or victims in this case in an amount
20  to be determined by the U.S. Probation Office.  Do you
21  understand that, and did you go over all of the restitution
22  requirements with your lawyer?

23         THE DEFENDANT:  I did.

24         THE COURT:  Say it again, please.

25         THE DEFENDANT:  I did.

1           THE COURT:  Say yes or no, please.

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  Now, you are a U.S. citizen?

4           THE DEFENDANT:  Yes.

5           THE COURT:  The law requires me to tell everybody

6   that pleads guilty to felony charges, or to any charge, that

7   those who plead guilty who are not U.S. citizens can be

8   deported from the U.S.  They can be denied the right to

9   reenter, remain, or work in the U.S.  If they come back to the

10  U.S. illegally, they can and probably will be prosecuted and

11  jailed.  And if they ever apply for U.S. citizenship, that can

12  be denied.  Again, that would only apply to you if you were not

13  a U.S. citizen.

14          Mr. Gonzalez, did you understand everything that I

15  explained to you this afternoon?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you have any questions at all about

18  your case, the charges in your case, the plea agreement,

19  anything in that regard?  Do you have any such questions?

20          THE DEFENDANT:  No.

21          THE COURT:  All right.

22          Ms. Winters, did I commit any Rule 11 error, or any

23  other error that you'd like to object to or have me correct for

24  you at this time?

25          MS. WINTERS:  No, Your Honor.

1          THE COURT:  Mr. Lopez, what about for you?  Did I

2    commit any Rule 11 error or any other error that you'd like to

3    object to or have me correct for you at this time?

4          MR. LOPEZ:  No, sir, you haven't.

5          THE COURT:  All right.

6          I'm going to ask you how you plead to these charges,

7    Mr. Gonzalez, and then we're going to review the underlying

8    factual basis, factual bases for each.  Okay?

9          Johnny George Gonzalez, to Count 1 of the amended

10   information charging you with aggravated sexual abuse of a

11   child.  To that charge, do you plead guilty or do you plead not

12   guilty?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  Ms. Winters, what's the factual basis for

15   Count 1 only, please?  What would you prove at trial?

16         MS. WINTERS:  Your Honor, I can read it, but I think

17   given the nature of the crime, the underlying facts are

18   important to understand the Defendant's state of mind at the

19   time that he traveled.  But I can condense to a certain portion

20   if you'd prefer.

21         THE COURT:  Well, I'll ask you -- I'll allow you to

22   read the factual basis if you'd like.  But I want -- what I

23   intend to do is zero in on and make sure that all of the

24   elements for each of these charges are covered.  So taking

25   Count 1, what would you prove at trial?

1          MS. WINTERS:  Your Honor, if this case were to go to

2   trial, the Government would be prepared to prove beyond a

3   reasonable doubt that in July of 2021, while utilizing a

4   fictitious online persona, Canadian law enforcement received an

5   unsolicited, direct private message from a member of Website A

6   with the username GustaYoung (phonetic) which was later

7   determined to be the Defendant, Johnny George Gonzalez.

8          In the message, the Defendant stated if you have Kik,

9   feel free to add me, with his username, Gusta10Yo.  I am active

10  on there.  Hope to hear from you soon.  The undercover officer

11  acting as Bridget then initiated a Kik conversation with the

12  Defendant.  During those communications, the Defendant admitted

13  that he has always had a sexual interest in younger girls, and

14  further told Bridget I've been with a teen girl when I was in

15  college.  She was 13.  Best time of my life, to be honest.

16         Gonzalez indicated that his preferred age was 10

17  years old just to see the start of development.  Gonzalez also

18  indicated that he wished his wife were aware of his interests

19  so that he could pursue them more fully and perhaps even

20  involve her.

21         Gonzalez later shared a link with Bridget in his

22  files on a Russian website.  The link that he provided

23  contained approximately 2,000 image files within approximately

24  90 folders.  Many of the files were spycam and voyeuristic

25  images and video files of clothed female children and teens at

1  stores to include the toy section and other places.  The files

2  depicted close-ups of the buttocks and crotch areas of multiple

3  different female children.

4          Canadian law enforcement also located chatroom with a

5  conversation titled GustasCaps (phonetic) on Website A.  Caps

6  is a slang term for online recorded images or video captured

7  files.  Under the chatroom conversations, the Defendant posted

8  four messages, each of which contained pictures of child

9  pornography.  Under the image files were links to download the

10  full videos, and he also posted the password to access those

11  videos.

12          The FBI was able to successfully download child

13  sexual abuse material from the link provided by Gonzalez.

14  After searching his iPhone, investigators located an email on

15  Gonzalez's Yandex account from July 21st of 2021.  In the

16  message, Gonzalez admitted to another pedophile that he has a

17  private, personal collection of child sexual abuse material

18  that he only shared with other users who also produced

19  material.  This indicated Gonzalez's desire for fresh content,

20  both that was produced by himself and others.

21          On July 30th of 2021, the Defendant made 61

22  surreptitious recordings of young children inside a local

23  Walmart and at a local mall in El Paso, Texas.  The video

24  spanned more than 10 hours beginning at approximately 7:00 a.m.

25  with the final recording at approximately 6:30 p.m.  In each of

the videos, the Defendant is attempting to film prepubescent boys and girls with a particular focus on their breasts, genitals, or buttocks.

In one of the videos, Gonzalez lingers on the breast of an approximately 12-year-old Hispanic female.  In another video, Gonzalez is observed following a young girl around the toy section of Walmart.  Gonzalez commented to the child you're still walking around here.  In a separate video, Gonzalez attempts to record up the shorts of an approximately three- to five-year-old girl sitting in a grocery cart.

Investigators learned that the next day, on July 31st, 2021, Gonzalez and his family drove from El Paso, Texas to Stratford, Texas to collect personal belongings.  The Defendant had secured employment just outside of El Paso, and the entire family had moved with him.

In July, Mr. Gonzalez knew that this trip to Stratford would be his last visit for an unknown amount of time.  Gonzalez's wife confirmed that the family drove through New Mexico in order to get to Stratford.  In a video taken from the early morning hours of July 31st, 2021, Gonzalez is inside of a Love's Travel Shop attempting to record the lower body of a female patron believed to be in her late teens or early 20s. Given the timing of the video, investigators believe the video was produced at the Love's Travel Shop near Clovis, New Mexico.

An interview with T.R.'s mother revealed that T.R.

25

1  was best friends with Gonzalez's daughter and had sleepovers at
2  the Gonzalez house at least twice a month when the family lived
3  in Stratford.  T.R.'s mother revealed that she knew Gonzalez
4  was traveling back to Stratford in advance of the July 31st,
5  2021 trip.

6          T.R.'s mother further stated that on July 31st, 2021,
7  she arranged with Gonzalez's wife to have T.R. have, quote, one
8  final sleepover at the Gonzalez house before they moved away
9  for good.  T.R. did not want to attend the sleepover, but she
10  was persuaded that this was the last change to see her best
11  friend, Gonzalez's child.

12          On July 31st, 2021, T.R. spent the night at
13  Gonzalez's home.  T.R. was dropped off at around 11:30 p.m. on
14  July 31st, 2021.  On September 28th of 2021, T.R. was
15  interviewed by an FBI child and adolescent forensic
16  interviewer.  She disclosed that Gonzalez had touched her on
17  her private parts while attending a sleepover.  T.R. later
18  clarified that Gonzalez had touched her at the last sleepover
19  that she had with Gonzalez's child in July of 2021.

20          When asked to clarify what part of her body Gonzalez
21  touched, T.R. said he had touched her pee part and poop part
22  using his finger.  T.R. reported that the final time this
23  happened, this incident in July of 2021, Gonzalez woke her up,
24  and while rubbing her thigh, her bare thigh, stated he was
25  going to miss her and doesn't want to leave her.

1    T.R. was not aware of Gonzalez taking photographs or

2    videos of her, however she identified herself in still shots

3    taken from a series of child sexual abuse material which will

4    be described later.  She further indicated that A.F., a friend,

5    told her that Gonzalez did the same thing to A.F.

6         THE COURT:  All right.  Let me stop you there.  And

7    keep track of where you are so we can finish up with that.

8         MS. WINTERS:  Yes, sir.

9         THE COURT:  So the factual basis for sexual act as

10   that term is defined in 18 U.S.C. 2246 for purposes of Count 1

11   is what?

12        MS. WINTERS:  It's the subsection (d), the

13   intentional touching, not through the clothing, of the genitals

14   for the purpose to degrade, humiliate, arouse sexual behavior.

15   I know I'm paraphrasing.  I'm sorry.

16        THE COURT:  And that's what I was getting at.  So I

17   didn't see in the factual basis a description that the touching

18   of the relevant parts of the body was not through the clothing.

19   Would you be able to prove at trial that the touching under

20   18 U.S.C. 2246(2)(d), the genitalia was not through the

21   clothing?

22        MS. WINTERS:  Yes, Your Honor.

23        THE COURT:  Thank you.  Continue, please.

24        MS. WINTERS:  And then just to finish that,

25   subsequent to the CAFI interview, T.R. later disclosed that

27

1  Gonzalez's abuse had occurred several times during sleepovers,

2  and the evidence would show that the sexual abuse had at least

3  occurred through April 2021.

4          THE COURT:  All right.  And then for purposes of

5  Count 1, did that touching, not through the clothing as we just

6  described, occur on or about July 31 of last year to on or

7  about August 1st of last year?

8          MS. WINTERS:  Yes, Your Honor.

9          THE COURT:  Thank you.  Go ahead and continue,

10 please.

11         MS. WINTERS:  The Government believes that all of

12 this evidence taken together shows that Gonzalez had the

13 specific intent to engage in a sexual act with T.R. at the time

14 that he crossed the state line from Texas into New Mexico, and

15 from New Mexico back into Texas.  Moreover, the evidence shows

16 that at least one motivating purpose of Gonzalez's travel and

17 interstate commerce was to engage in this sexual act, and the

18 act of traveling across state lines is again, this is Count 1

19 of the felony information.

20         THE COURT:  All right.  Mr. Gonzalez, did you hear

21 what the Prosecutor said happened with respect to Count 1?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Is all of that true?

24         THE DEFENDANT:  (No audible response).

25         THE COURT:  Mr. Gonzalez?

1           THE DEFENDANT:  I don't feel that it's all true.  But
2   I'll -- I'll agree to it.  Yes.
3           THE COURT:  Well, I'm not going to allow that.  Part
4   of what my job is under Rule 11 of the Federal Rules of
5   Criminal Procedure is that I have to make sure that there's a
6   factual basis supporting what you're charged with.  Do you want
7   some time to speak with your lawyer about that because when I
8   ask you, and you're testifying under oath --
9           THE DEFENDANT:  Let's just proceed.  I agree.  Yes.
10          THE COURT:  All right.  Well, let me ask you this, on
11  or about July 31st of last year through on or about August 1st
12  of last year, did you travel across state lines?
13          THE DEFENDANT:  Yes, I did.
14          THE COURT:  And was that from Texas to New Mexico or
15  New Mexico to Texas?
16          THE DEFENDANT:  El Paso to New Mexico through Highway
17  54 all the way to Stratford, Texas.
18          THE COURT:  Okay.  So you traveled from El Paso,
19  Texas to Stratford, Texas --
20          THE DEFENDANT:  Cross through --
21          THE COURT:  -- through New Mexico.
22          THE DEFENDANT:  -- New Mexico.  Yes.
23          THE COURT:  Is that correct?
24          THE DEFENDANT:  Yes.
25          THE COURT:  Louder, please.

1          THE DEFENDANT:  Yes, that's correct.

2          THE COURT:  All right.  And while you were crossing

3    from the Texas side to the New Mexico side, did you have the

4    intent to engage in a sexual act, as I've explained to you what

5    that is, with a minor under the age of 12 years?

6          THE DEFENDANT:  My intent was not to travel back home

7    for that reason.  My intent to travel back home was to pick up

8    our belongings, as my family and I were relocating to El Paso.

9    That was my intent.  The -- what ended up occurring just ended

10   up occurring at the very last minute.  I was not aware of the

11   sleepover or any of that until last minute.

12         THE COURT:  All right.  So I guess another way to ask

13   that is in Count 1 of this amended information, the minor, her

14   initials are T.R., did you know she was going to be there at

15   all when you were crossing from Texas into New Mexico?

16         THE DEFENDANT:  I was not aware until we had arrived

17   in Stratford.

18         THE COURT:  Ms. Winters, what do you think about

19   that?

20         MS. WINTERS:  I disagree based on the evidence.  And

21   this plea cannot go forward.

22         THE COURT:  Okay.  Do you all want to talk for a

23   little bit?  I mean, it's 4 o'clock.

24         MS. WINTERS:  I've spoken to Mr. Lopez immediately

25   before the hearing to --

1          THE COURT:  I just want to make sure we're catching
2    everything that you're saying, Ms. Winters.  Would you --
3          MS. WINTERS:  I'm sorry.
4          THE COURT:  You can from there or the lectern,
5    however's most convenient for you.  Hold on a second.
6          So I'm being very particular about this guilty plea
7    because of the gravity of the potential penalties.  And I am
8    dotting every I, and I'm crossing every T as the law requires
9    me to do.  So at the outset, the most serious of the charges is
10   Count 1 which provides for a minimum term of imprisonment of 30
11   years.
12         This charge only has three elements.  One is crossing
13   the state line which Mr. Gonzalez just admitted to.  As I read
14   it, the specific intent has to be contemporaneous with the
15   crossing of the state line.  One of the questions I asked the
16   last time we were in court was whether or not Mr. Gonzalez even
17   knew that T.R. would have been at the destination location at
18   the time that he commenced the trip.
19         I would presume that would have -- I mean, that's
20   almost a condition precedent to establish the specific intent.
21   Mr. Gonzalez has taken an oath to tell the truth.  If he's
22   telling me now that he did not know that T.R. would be at the
23   destination location, unless somebody can come up with another
24   theory of culpability that I'm not seeing, I'm probably going
25   to recommend to Judge Montalvo that any guilty plea to Count 1

1   may be structurally flawed.  I'm willing to hear any party in

2   that regard.

3            Mr. Lopez, can I hear from you?

4            MR. LOPEZ:  Your Honor, explained to my client, and

5   without violating attorney/client privilege, but so that we can

6   make it through this plea, is that the evidence that they --

7   there is no direct evidence like a text message or an email or

8   a recording indicating that Mr. Gonzalez specifically stated

9   I'm going to Stratford and I'm going to cross through

10  New Mexico to have sexual contact with T.R.

11           I've explained to him that the circumstantial

12  evidence regarding his intent was there is evidence in the --

13  there is evidence in the discovery they provided that shows

14  that he maintained or had a grooming relationship with T.R.  At

15  least that's the evidence they provided us.

16           Number two, T.R. has been a friend of his daughter

17  and has been a friend of his daughter when they used to live up

18  there.  So he's familiar with this person, this child.

19  Secondly, I explained to him that the day before on July 30th

20  of 2021, Mr. Gonzalez had been in Walmart here in El Paso,

21  Texas where he walked around for 12 hours and recorded various

22  pictures of minors throughout the day.  That too has been

23  presented to us.  And so we have that.

24           Additionally, on the day of the traveling, when he

25  crossed over to New Mexico, they were at the Love's Travel

1  Stop.  He was recording underage persons again on I believe he
2  was using his phone.  And that too has been provided to us.
3          So while there was no specific intent to -- while
4  there was no direct evidence with regards to Mr. Gonzalez
5  verbally or in any way stating specifically that's why he's
6  going to Stratford, I explained to him and he informed me that
7  he understood that circumstantially, given what happened at
8  Walmart the day before, the relationship that he's had with
9  T.R.
10         In addition -- sorry, Your Honor.  I'll just go back
11  before I summarize everything.  According to the Government, as
12  well as the evidence they had provided us in the ROIs,
13  statements made by T.R. have indicated that this alleged abuse
14  had been going on for some time, that the sexual contact made
15  on the July 31st, August 1st, 2021 was not the first time, that
16  this was not a -- as I explained to my client, it's not a crime
17  of opportunity.
18         I said it would be one thing if he were to have gone
19  to let's just say from New Mexico, he went there and they were
20  going to travel, they were going to camp out in Silver City.
21  And if they were in Silver City and they came across a minor or
22  a child and then he started to record that child, that would
23  clearly be a crime of opportunity whereas traveling to
24  Stratford, going through New Mexico which is the normal route
25  that they normally would travel, he's going and that person,

1  T.R., the child lives there still, and the child's a friend of

2  his daughter's.

3          Now, I was under the assumption that he understood

4  this when we started before, because that was the one thing

5  that he had a lot of questions about.  And the one thing I

6  explained to him that if they'll approve this, they're just

7  going to have to tighten it up a little bit.

8          And so that's where we stand, or at least that's

9  where I stood, and I understood that he understood that.  But

10 apparently, I'm not sure why we're at this juncture of the

11 plea.

12         THE COURT:  Well, let me -- I took a look at the case

13 law.  So the Fifth Circuit case that I was able to zero in on

14 was called <u>Sealed Appellee vs. Sealed Appellant</u>.  And it's

15 825 F.3d 247, 5th Circuit 2016.

16         MR. LOPEZ:  May I get the cite again, Your Honor?

17         THE COURT:  Yes.

18         MR. LOPEZ:  I'm so sorry.

19         THE COURT:  It's 825 F.3d 247.  825 F.3d 247,

20 Fifth Circuit 2016.  And in that case, maybe there's a later

21 one, the Fifth Circuit said it had not yet defined the elements

22 of 2241(c).  But, it sort of adopted the elements in the Third,

23 Ninth, and Tenth Circuits.  And it was the Ninth Circuit

24 elements which is the crossing of the state line; two, with the

25 intent to engage in a sexual act with a minor under the age of

34

12 years; and three, either performing or attempting to perform the act.

The Fifth Circuit was citing there a 2012 Ninth Circuit case, a 2010 Third Circuit case, and a 2000 Tenth Circuit case. Now what's interesting is that in the Fifth Circuit case that I just listed for you, on Page -- of course on Lexus it's impossible for me to figure out the page numbers, 251, this is what the Fifth Circuit was quoting the Tenth Circuit saying:

"The Tenth Circuit considered a claim that that the evidence was insufficient to support the intent element of this offense and, in analyzing the claim, echoed" a Supreme Court case that said that, "the illicit sexual activity need not be the sole purpose for traveling across state lines but had to be one of the 'efficient and compelling' or dominant purposes for doing so."

Hence, my question during our last hearing -- well, hence my forecast that I would be asking the question to Mr. Gonzalez about whether or not he had knew that T.R. would even be there. I asked him this morning -- I asked him this afternoon, and he indicated to me under oath he did not know she was going to be there. So that probably puts Count 1, at least based on what Mr. Gonzalez is telling me this afternoon, in some trouble.

1          So without beating a dead horse, how does Counsel
2  want to proceed going forward?  I don't think it makes sense
3  for me to go through Counts 2 through 11 when the plea
4  agreement provides for guilty pleas to Counts 1 through 11
5  because then you don't have a plea agreement.

6          And, again, if you think I'm being too technical
7  about this, you can certainly not consent and go up to Judge
8  Montalvo.  But I'm certain he'll have the same questions that
9  I've got because when you have a case of this gravity, but
10 especially in every case, each element must be met for purposes
11 of a Rule 11 factual basis inquiry.  And that's why I was
12 forecasting what I was going to say at this hearing a week ago.

13         So, Ms. Winters, what would you like to do?

14         MS. WINTERS:  I'm not sure exactly what the question
15 is.

16         THE COURT:  What do you want to do.

17         MS. WINTERS:  I would like this case put back on for
18 docket call for trial.

19         THE COURT:  Okay.  Mr. Lopez?

20         MS. WINTERS:  Well, I'm sorry.  We would need to
21 supercede our indictment.  So put back on docket call for a
22 status conference and this can be presented next week.

23         THE COURT:  All right.  The long and the short of it
24 is you'd like it returned to the district court with a request
25 that it be placed on the court's next calendar?

1          MS. WINTERS:  Yes, Your Honor.

2          THE COURT:  All right.  Any objection, Mr. Lopez?

3          MR. LOPEZ:  Your Honor --

4          THE COURT:  Let's go off the record for a second.

5      (Recess at 4:10 p.m./Reconvened at 4:12 p.m.)

6          THE COURT:  All right.  I think we've come to the end

7  of this discussion.  Here's my narrow concern, and I'll repeat

8  it probably for the 50th time.  There's a specific intent

9  element associated with 18 U.S.C. 2241(c) that I don't think is

10 satisfied.  I'm not going to partake in the parties'

11 negotiations.  I don't have a basis for doing so.  I have not

12 done so in this case.

13         My sole job is to recommend to the District Judge

14 about whether or not there's a factual basis.  And the primary

15 element that creates federal jurisdiction for purposes of

16 Count 1, based on Mr. Gonzalez's sworn testimony to me in

17 response to my question, I think causes me much pause about

18 whether or not there would be a sufficient factual basis for

19 Count 1.

20         Ms. Winters has indicated a request that this be sent

21 back to the district court.  I will do so.  And I'm sure you'll

22 be hearing from them.  Okay.

23         THE DEFENDANT:  I want to plead, Your Honor.  I don't

24 want to take this back.  I just want a plea.

25         THE COURT:  Well, Mr. Gonzalez, I appreciate that.

1  And I hear what you're saying.  But I've got a job to do.  And

2  one of the things that I have to do under the law, under a

3  particular Federal Rule of Criminal Procedure, is match up what

4  I'm told what the facts were and match that up against the

5  charge because I have to make a determination about whether or

6  not there is a sufficient factual basis for a guilty plea.

7           And based on what I've heard today, and I'm sure I've

8  explained it, as I do, too many times, there's a problem here.

9           So what's going to happen is I'm going to send this

10 back to the district judge because that's what the Prosecutor

11 has asked me to do.  That doesn't mean the parties can't come

12 to some agreement if they choose to do so.  But what is in

13 front of me today is not going to work.

14          And even if you told me you wanted to plead guilty no

15 matter what, I have a job to do, and I have to make sure

16 there's a sufficient factual basis.  Otherwise, I'd be doing a

17 disservice to my boss who is the district judge who relies on

18 me to make those legal determinations.  And that's why I've

19 done all this research, and that's why I'm prepared.  Okay?

20          So that's what we're going to do.  And we'll stand in

21 recess.  Thanks, everybody.

22      (Proceedings concluded at 4:14 p.m.)

23

24

25

38

1          **C E R T I F I C A T I O N**

2          I, DIPTI PATEL, court approved transcriber, certify

3 that the foregoing is a correct transcript from the official

4 electronic sound recording of the proceedings in the above-

5 entitled matter, and to the best of my ability.

6

7 /s/ Dipti Patel

8 DIPTI PATEL, CET-997

9 LIBERTY TRANSCRIPTS          DATE: May 4, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25